IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| STEVEN TABER, and | ) | |
| RENE TABER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 16-00162-CV-W-SWH |
| | ) | |
| FORD MOTOR COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Steven and Rene Taber filed suit against Ford Motor Company as the result of an accident occurring on July 8, 2014, when the 1996 Ford Ranger Mr. Taber was driving was involved in a frontal offset collision with another vehicle. Plaintiffs allege that Mr. Taber sustained permanent injuries as the result of the failure of his airbag to deploy and as the result of defects in the Ranger's body shell, driver's restraint system including the seatbelt, airbag and sensing system and associated component parts. The complaint sets forth causes of action for product liability (strict liability), product liability (negligence), breach of warranty, failure to warn, loss of consortium and punitive damages. (Doc. #43)

Pending before the Court is Plaintiffs' Motion to Compel Ford's Responses to Plaintiffs' Request for Production and Plaintiffs' Rule 30(b)(6) Topics[1], doc #48, and a supplemental

---

[1] Plaintiffs' motion requested an order requiring Ford to produce a Rule 30(b)(6) witness to testify with regard to Topic 11 as stated in Plaintiffs' Third Amended Videotaped Deposition

motion to compel, doc. #88, arising out of various discovery disputes which have been under discussion with the Court since November 10, 2016. Despite two discovery conferences on November 10, 2016 and January 12, 2017, which were held pursuant to Local Rule 37.1(a)(2), the parties were not able to resolve all discovery issues. Therefore, on January 18, 2017, an initialmotion to compel was filed, doc. #48. However, supplemental briefing[2] and further conferences[3] with the Court have narrowed the dispute to two main issues: whether the attorney-client and/or work product privilege prevents disclosure of 1) certain documents involving other similar incidents ("OSI") and 2) suspension orders.

## II. OTHER SIMILAR INCIDENTS (OSI)

A.  Background of the OSI Discovery Dispute

Plaintiffs requested other similar incidents through three document requests pursuant to Federal Rule of Civil Procedure 34:

Request No. 8:

Identify by case name, date and location all field incidents that Ford has become aware of that relate to non-deployment in moderate to severe frontal impact crash events where serious occupant injuries have resulted.

Request No. 10:

Provide all documents which pertain to failure of the driver frontal impact airbag to deploy during frontal crashes where deployment was expected, based on field performance and/or complaints from consumers or government agencies.

Request No. 11:

---

Notice. At the April 12, 2017 hearing, the Court found that the notice was overly broad and would need to be rewritten. (Doc. #85 at 33:23-25, 34:1-4)

[2] A supplemental motion to compel (doc. #88) was filed on May 18, 2017, which was to set forth the issues as narrowed.

[3] In addition to the conferences on November 10, 2016, and January 12, 2017, the Court conferred with the parties concerning discovery issues again on March 16, April 12, and June 15, 2017.

> All documents related to incidents of any Ford Ranger and related vehicles' (as agreed by the parties) airbag system non-deployment, including, but not limited to:
> (a) Consumer complaints, letters, memos, and e-mails (including those from fleet operators);
> (b.) Field reports, including dealer service reports;
> (c.) Third-party arbitration proceedings;
> (d.) Complaints filed with a Court of law;
> (e.) Reports to or by any governmental agencies;
> (f.) Internal memoranda, reports or summaries of any kind involving property damage or injuries; and
> (g.) Photographs of injuries or property damage.

(Doc. #49-2)

The request for production of documents at issue was served by plaintiffs on Ford on September 16, 2016. (Doc. #49-2) Defendant's response dated October 17, 2016, was attached as Exhibit A to defendant's response to the motion to compel. (Doc. #75-1) There was no claim of privilege asserted in Ford's October 17, 2016, response to document requests 8, 10 and 11. (Doc. # 75-1) Plaintiffs' motion to compel seeks all responsive documents to the above-stated requests for production. In opposing plaintiffs' motion to compel OSI material, defendant contends that plaintiffs have provided no support for their claim that defendant has failed to provide OSI material. According to Ford:

> Plaintiffs have not identified a single "other incident" document that Ford has failed to produce. To the contrary, pursuant to extensive meet-and-confer efforts, including a conference with the Court, Ford agreed to produce thousands of documents from Ford's lawsuit and claim files, each containing case specific information, to resolve discovery issues regarding Ford's other incident production. Ford produced the documents in those open and closed lawsuit/claim files upon which the parties agreed—so there is nothing more to compel. See Ex. O[4], pp. 11-19. Ford's substantial and voluminous "other incident" document production is complete. Plaintiffs' Motion is based on pure speculation and should be denied.

---

[4] Ex. O referenced in Ford's suggestions was the transcript of a conference with the Court on January 12, 2017.

(Doc. #75 at 8-9; footnotes omitted)  Further, in opposing plaintiffs' request that a Rule 30(b)(6) deponent be compelled to testify as to other similar incidents, defendant contended a deposition was unnecessary as the witness would only be able to "parrot the very documents Ford has produced to plaintiffs." (Doc. #75 at 17)

In response to Ford's opposition to the motion to compel, plaintiffs filed reply suggestions on March 8, 2017, contending that Ford's production of OSI material had been fragmented, shuffled and incomplete. (Doc. #78 at 6)  Further, plaintiffs were concerned by defendant's use of language stating that documents were being produced "if available" and if "non-privileged." (Doc. #78 at 6)  Plaintiffs' reply suggestions attached a privilege log filed by Ford in another case to demonstrate that if Ford was claiming some of its documents were privileged, it was aware of its legal obligations to file a privilege log. (Doc. #78-4)  As of March 8, 2017, the Court can find no assertion by defendant that any of the OSI documents responsive to plaintiffs' request were privileged.

The Court held a further discovery conference with the parties on March 16, 2017, and as of that date Ford had still not made any claim of privilege with respect to the OSI information sought by plaintiffs in the three document requests at issue nor had any privilege log been filed with regard to OSI material. During the March 16, 2017 conference, it became clear that Ford had reviewed only its open and closed files and not those of its outside counsel. (Doc. #83 at 63:21-24)  Ford's counsel took the position it was not prepared, at that conference, to address the issue of its obligation to review outside counsel's files for relevant information.  (Doc. #83 at 86-87)  Ford's counsel indicated that she had not looked into Ford's obligation to review outside counsel's files for information relevant to the document requests because she thought there was an agreement that Ford need only examine its open and closed files.

Other than a footnote where Ford represented it had reviewed its open and closed files, see doc. #75 at n. 6, there was no evidence presented of any agreement between plaintiffs and defense counsel that limited Ford's obligation to review other files under its "control" within the meaning of Federal Rules of Civil Procedure 26(a)(1)(A)(ii) and 34(a)(1). Plaintiffs took the position at the March 16, 2017 conference that defendant's legal obligations were clear and that Ford was required to review all files in their control for relevant material.[5] (Doc. #83 at 89) In subsequent briefing, Ford did not contend that it was not required to produce relevant documents from outside counsel's files, and in fact, one of the two privilege logs before the Court involves OSI material found in outside counsel's files.

Following the March 16 hearing, Ford produced two sets of privilege logs pertaining to OSI material. The first set of privilege logs for OSI material was dated March 22, 2017, six days after the conference with the Court. (Doc. #84-7) A modified version entitled Second Supplemental Privilege Log dated March 29, 2017, was submitted on a flash drive, along with the documents to be reviewed in camera. This set of privilege logs will be referred to as the March 29, 2017 privilege log. The second set of OSI privilege logs started with a privilege log which was served on plaintiffs on May 19, 2017, a day after the plaintiffs' revised motion to compel was due. (Doc. #90 at 1) This new privilege log pertained to OSI material in the

---

[5] Federal Rule of Civil Procedure 34 provides:

> **(a) In General.** A party may serve on any other party a request within the scope of Rule 26(b):
>   **(1)** to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or ***control*** . . . .

Fed R. Civ. P. 34(a)(1) (emphasis added). In the context Rule 34, control has been defined as the legal right to obtain required documents on demand. See Gerling Int'l Ins. Co. v. Comm'r, 839 F.2d 131, 140 (3rd Cir. 1988); 8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2210 (2d ed. 1994).

possession of outside counsel. Due to the untimely service of the privilege log, plaintiffs submitted further suggestions in support of their motion to compel and included the privilege log (Pl. Ex. #49) as an exhibit. (Doc. #90; Doc. #90-1) At the June 15, 2017 hearing, defendant stated that item numbers 1 through 8 of the privilege log had just been produced. (Doc. #96 at 8:22-25 to 9:1-11) Defendant then filed a sur-reply and attached a second amended privilege log dated June 20, 2017, which removed the documents referenced at the June 15, 2017 hearing and also inexplicably removed two other sets of photographs which were listed as item numbers 14 and 15 on Exhibit 49. (Doc. #97-1) This second set of privilege logs will be referred to as the June 20, 2017 privilege log. At plaintiffs' request, the Court agreed to review the documents identified in the two OSI privilege logs in camera.

The documents on each of the two OSI privilege logs are identified by entry log number with columns of information setting forth the bates number of the documents, the date, the document type, the author, the recipient, a description of the document, the basis for the claim of privilege and the claimant's name. For each entry log number on the March 29, 2017 privilege log, Ford is claiming both the attorney-client and work product privileges. Ford is only claiming work product privilege with regard to the June 20, 2017 privilege log pertaining to OSI material obtained from outside counsel. Thus, the Court must first consider the applicable legal standards that govern consideration of the defendant's privilege claims.

B.   <u>Applicable Legal Standards for the Privilege Claims</u>

This is a diversity case and, therefore, state law applies to resolve the attorney-client privilege claims and federal law governs the work product privilege issues. <u>See</u> <u>Baker v. Gen. Motors Corp.</u>, 209 F.3d 1051, 1053 (8th Cir. 2000). In recognition that it bears the burden of establishing the existence of the privilege claims, Ford has produced the above mentioned

6

privilege log. While the rules do not specify what information must be provided in a privilege log, courts have generally held that the privilege log should set forth specific facts which if taken as true establish the elements of the privilege for each document for which the privilege is claimed. See Fid. Nat'l. Title Ins. Co. v. Captiva Lake Invs., LLC, No. 4:10-CV-1890-CEJ, 2012 WL 3562207, at *3 (E.D. Mo. Aug. 17, 2012). Thus, it is important that the privilege log contain a brief description or summary of the contents of the document, the date the document was prepared, the person or persons who prepared the document, the person to whom the document was directed and for whom the document was prepared, the purpose in preparing the document, what privileges are asserted for each document and how each element of the privilege is met for that document. See Highmark, Inc. v. Nw. Pipe Co., No. CIV 10-5089-JLV, 2012 WL 997007, at *5 (D.S.D. Mar. 23, 2012).

    1.    <u>Elements of Attorney-Client Privilege</u>

A communication is subject to the attorney-client privilege when it is:

> 1) Information transmitted by voluntary act of disclosure; 2) between a client and his lawyer; 3) in confidence; and 4) by a means which, so far as a client is aware, discloses the information to no third parties other than those reasonably necessary for the transmission of the information or for the accomplishment of the purpose for which it is to be transmitted.

State v. Longo, 789 S.W.2d 812, 815 (Mo. Ct. App. 1990). Moreover, the communication must have been made for the purposes of obtaining legal advice in order for the communication to be privileged. See Pipes v. Sevier, 694 S.W.2d 918, 926 (Mo. Ct. App. 1985); Bussen v. Del Commune, 199 S.W.2d 13, 20–21 (St. Louis Ct. App. 1947). Lastly, the attorney-client privilege will only attach to communications between the attorney and the client when the client reasonably expects their communication to remain confidential. See Longo, 789 S.W.2d at 815.

    2.    <u>Elements of Work Product Privilege</u>

7

The work product doctrine, as recognized under federal law, protects materials prepared by an attorney in anticipation of litigation from discovery. See Hickman v. Taylor, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947). In order to protect work product, the party seeking protection must show the materials were prepared in anticipation of litigation, i.e., because of the prospect of litigation. See Binks Mfg. Co. v. Nat'l Presto Indus., Inc., 709 F.2d 1109, 1118–19 (7th Cir.1983). Once a work product privilege has been established, it is important to distinguish between the two kinds of work product —"ordinary work product and opinion work product." Baker, 209 F.3d at 1054 (citing Gundacker v. Unisys Corp., 151 F.3d 842, 848 n. 4 (8th Cir. 1998)). Ordinary work product includes raw factual information and is not discoverable unless the party seeking discovery has a substantial need for those materials and cannot obtain the materials by other means. Id. Opinion work product consists of counsel's mental impressions, conclusions, opinions or legal theories and enjoys almost absolute immunity, making opinion work product discoverable in only rare and extraordinary circumstances. Id.; see also In re Murphy, 560 F.2d 326, 336 (8th Cir. 1977).

C. Document Review of the OSI Material

Just prior to the June 15, 2017 hearing, Ford produced all of the OSI material for the Forsythe case for which it had been asserting privilege claims on the May privilege log. (Doc. #96 at 8) Plaintiffs further withdrew their request for records from the March 29, 2017 privilege log concerning the McIntosh, Charles, Beachy, Robinson, Kotansky and Volrath claims. (Doc. #88 at 8-10; doc. #96 at 13:1-17) Thus, plaintiffs' motion to compel OSI material referenced on the March 29, 2017 privilege log is now limited to the following individuals: Dunwoody, Becking, Pezak, McKenzie, Nelson, Osborne and Amory. (Doc. #96 at 12-13; doc. #88 at 8-10)

1. March 29, 2017 Privilege Log

The following are the pertinent log entries before the Court in connection with the March 29, 2017 privilege log:

| Log Entry No. 6 | Dunwoody |
|---|---|
| Log Entry No. 7 | Becking |
| Log Entry No. 11 | Pezak |
| Log Entry No. 16 | McKenzie |
| Log Entry No. 17 | Osborne |
| Log Entry No. 18 | Osborne |
| Log Entry No. 19 | Nelson |
| Log Entry No. 20 | Amory |
| Log Entry No. 21 | Amory |

  a. <u>OSI Documents Reviewed for Attorney-Client Privilege</u>

In its briefing, Ford claims that the attorney-client privilege is proper for these documents for the reasons that:

> Ford has properly claimed that handwritten inspection notes and memoranda from its Design Analysis Engineers are privileged attorney-client communications and attorney-work product. The handwritten notes and memoranda are governed by the attorney client privilege because they are communications between Ford and Ford's counsel, made during the course of an attorney-client relationship related to then-active litigation. As such, these documents are immune from discovery.

(Doc. #92 at 10) (citations omitted)

> Moreover, all of the logged documents are privileged and should not be ordered produced to Plaintiffs. Ford has established that all of the remaining entries on Ford's March 22, 2017, Privilege Log (Dkt. 84, Exhibit 34), Entries Nos. 6 through 21, constitute attorney-client communications and opinion work product and are thus are immune from discovery. <u>See</u> Dkt. 92, pp 4-7. <u>Baker</u>, <u>supra</u>.

(Doc. #97 at 4)

Particularly in the context of documents created by a corporation for which a claim of attorney-client privilege is raised, it is important to know who prepared and who received or had access to the documents since the information must have been transmitted between the lawyer and his client for the purpose of obtaining legal service or advice and involves the lawyer in his capacity as a lawyer. <u>See</u> <u>Electric Power Syst. Int'l, Inc., v. Zurich Amer. Ins. Co.</u>, 15-CV-1171

CDP, 2016 WL 3997069, at *2 (E.D. Mo., July 26, 2016). A communication by a lower level employee is covered by the attorney-client privilege when:

> (1) the communication was made for the purpose of securing legal advice; (2) the employee making the communication did so at the direction of his corporate superior; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication is within the scope of the employee's corporate duties; and (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

DeLaporte v. Robey Bldg. Supply, Inc., 812 S.W.2d 526, 531 (Mo. Ct. App. 1991) (quoting Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 609 (8th Cir. 1978)). The recipient column on the March 29, 2017 privilege log is blank except for two Log Entry numbers 11 (Pezak) and 18 (Osborne), meaning that for all other entries there is no indication of who received the documents. All entries on the privilege log, except for Log Entry numbers 6 (Dunwoody) and 7 (Becking), contain the following statement: "Because this matter was a non-litigated claim and not a lawsuit, Ford can confirm this memorandum was not disseminated outside of Ford." However, whether a document is disseminated outside of the corporation is not the test of whether a document created by Ford's attorneys or at their request has been treated as confidential and not disclosed to individuals other than the client. Responding to various criticisms of its privilege logs by plaintiffs, Ford contends that:

> And even if this Court determines that Ford's Privilege Logs are deficient in some manner, a finding of waiver is not the appropriate remedy. Progressive Cas. Ins. Co. v. F.D.I.C., 298 F.R.D. 417, 421 (N.D. Iowa 2014) ("even if a privilege log provides insufficient information," waiver as a sanction is "disfavored absent bad faith, willfulness, or fault."). Such factors are not present here, so no waiver should be found.

(Doc. #97 at 4)

Because the Court did not believe it could fairly rule on the motion to compel by simply reviewing the March 29, 2017 privilege log, it has now reviewed the documents in camera. On the basis of that review, the Court concludes that the following documents are not subject to the attorney-client privilege: Log Entries 6, 7, 16, 17, 19, 20, and 21.

The Court has concluded that the attorney-client privilege does not protect these documents from discovery as they contain factual information. Other courts have not hesitated to reject attorney-client privilege claims where the information is primarily factual:

> This does not mean that discoverable factual information can be made privileged by being recited by the attorney or the client in their confidential communications. Only the actual attorney-client communications are privileged. For example, in this case the relators had an investigation of the fire made by GAB which made various reports to relators. In addition, the FBI conducted surveillance of persons preceding the fire at Cannova's restaurant on December 24, 1973, made further investigation after the fire, and submitted a written report covering that surveillance and investigation to Dr. McNamara, then Kansas City Chief of Police, on January 18, 1974. A copy of that report was obtained by Risjord [the attorney]. It and the GAB reports were furnished to Cannova pursuant to its discovery efforts. If these had been attached to or discussed in the letters from Risjord [the attorney] to relators, the fact that the attorney's letters would be privileged would not cause the GAB reports or the FBI letter to become protected by the attorney-client privilege. They still would be discoverable under Rule 56.01(b).

State ex rel. Great Amer. Ins. Co. v. Smith, 574 S.W.2d 379, 385 (Mo. en banc 1978). See Bd. of Registration for the Healing Arts v. Spinden, 798 S.W.2d 472, 476 (Mo. Ct. App. 1990) (rejecting a claim of attorney-client privilege for investigative reports, prepared at the direction of the Board of Healing Arts as part of a disciplinary action against a doctor in which counsel for the Board participated, for the reason that the reports contained factual information). While the issue of attorney-client privilege is governed by state law, courts have almost universally accepted the premise that factual information is not protected by this privilege. As the court noted in Oasis International Waters, Inc. v. United States, 110 Fed.Cl. 87 (2013):

> In addition, although the privilege protects the substance of attorney-client communications, "it does not protect disclosure of the underlying facts by those who communicated with the attorney." Upjohn Co. v. United States, 449 U.S. at 395, 101 S.Ct. 677. Underlying facts, therefore, are independently discoverable, but the facts that a client included in a request for legal advice to assist the attorney in providing legal services are privileged in the context of an attorney-client communication. See Muro v. Target Corp., 250 F.R.D. 350, 363 (N.D.Ill.2007), aff'd, 580 F.3d 485 (7th Cir. 2009); Kintera, Inc. v. Convio, Inc., 219 F.R.D. 503, 508–09 (S.D.Cal. 2003); see also Upjohn Co. v. United States, 449 U.S. at 395–96, 101 S.Ct. 677 ("'A fact is one thing and a communication concerning that fact is an entirely different thing.'" (quoting City of Philadelphia v. Westinghouse Elec. Corp., 205 F.Supp. 830, 831 (E.D.Pa. 1962))). A client cannot shield a document from discovery by including it in a request for legal advice. Fisher v. United States, 425 U.S. at 403–04, 96 S.Ct. 1569; see also Evergreen Trading, LLC ex rel. Nussdorf, 80 Fed.Cl. 122, 138 (2007).

Oasis International Waters, Inc. v. United States, 110 Fed.Cl. 87, 99-100 (2013). As support for this claim of privilege, Ford also relies on PepsiCo, Inc. v. Baird, Kurtz & Dobson, LLP, 305 F.3d 813 (8th Cir. 2002). (Doc. #92 at 10) It should be noted that in PepsiCo, the Eighth Circuit was interpreting an Illinois statute which established an accountant-client privilege; and thus, the Missouri attorney-client privilege doctrine was not at issue. In concluding that the accountant-client privilege did not apply to non-financial consulting services rendered by an accounting firm, the Eighth Circuit cited several cases involving attorney-client privilege issues including Simon v. G. Searle & Co., 816 F.2d 397, 403 (8th Cir. 1987), for the proposition that "legal departments are not citadels where information may be placed to defeat discovery; business documents sent to corporate officers are not automatically privileged." PepsiCo, Inc., 305 F.3d at 816. Thus, PepsiCo provides little support for Ford's claim of attorney-client privilege in this case.

Parts of Log Entry 11, which similarly contain purely factual information, are not subject to the attorney-client privilege including the finding section at page AB075491 (this section reports what was observed during testing), the diagram showing damage at page AB075493, and

pages AB075494 and AB075495.[6] With the exception of this information, production of Log Entry 11 will be denied. Log Entry 18 contains the opinions of the Ford employee as to what he was observing during an inspection of the vehicle and directed to a claims analyst apparently in the Office of General Counsel (OGC). While the privileged nature of the document could be better explained, the Court will deny production of that document.

### b. OSI Documents Reviewed for Work Product Privileges

The determination that documents reflected in particular log entries are not protected by the attorney-client privilege does not end this Court's inquiry since Ford has also claimed the work product privilege for the documents in question. With respect to the work product privilege as to ordinary work product, Ford maintains that plaintiffs cannot show that it has a substantial need for the material and that it cannot obtain the materials by other means — the two requirements for overcoming a claim of privilege for ordinary work product.

Citing <u>Gundacker v Unisys Corp.</u>, 151 F. 3d 842, 847 (8th Cir. 1998), Ford argues that where material is not relevant, plaintiffs cannot demonstrate a substantial need for the material. (Doc. #97 at 5) In this case, Ford claims that plaintiffs:

> have not provided the Court with one scintilla of evidence establishing that the three cases at issue, Bryant, Dunwoody, and Hood, are sufficiently similar in terms of vehicle, accident, or alleged cause of non-deployment that those cases would ever be admissible as other incidents against Ford.

(Doc. #97 at 5) However, the document requests dealt with other accidents involving non-deployment in moderate to severe frontal impact crash events where serious occupant injuries

---

[6] Log Entry 11 is described in the privilege log as the LaPointe memo. However, only one page appears to have Mr. LaPointe's name on it. By attaching a number of pages of documents to this one entry log without further description it is difficult to determine who authored pages AB075494 and AB075495. However, they appear to record factual information concerning the condition of the vehicle, and in any event it is up to defendant to demonstrate the existence of the privilege.

resulted (Doc. #49-2 at RFP No. 8) or cases where the driver'sairbag did not deploy during frontal crashes where deployment was expected (doc. #49-2 at RFP No. 10). Through negotiations, the parties narrowed down the scope of the requests, but it is clear from the requests and discussions during the various status conferences that plaintiffs are not seeking accidents that were not frontal impact collisions or that were not similar to the accident in this case.

More importantly, the scope of discovery in connection with other potentially similar accidents is much broader than the question of whether the other accident information is sufficiently similar to be admissible at trial. In a case involving what constituted similar accidents, Continental Tire objected to producing other accident information on the basis that the information was not relevant because the plaintiffs had not demonstrated the other accidents were sufficiently similar to be used at trial. See Albee v. Cont'l Tire N. Amer. Inc. et al., No. Civ. S-09-1145-LKK/EFB, 2010 WL 1729092 (E.D. Cal. April 27, 2010). As the court explained in Albee:

> The distinction between admissibility at trial and discoverability is especially significant where, as here, a threshold question is factually intensive. Information necessary to determine whether products are similar will ordinarily be within the control of the manufacturer and/or designer. The rules cannot be read as imposing a "Catch-22" that would require proof of similarity before a party may discover evidence of similarity.

Albee, 2010 WL 1729092, at *7.

Ford also argues that plaintiffs have not demonstrated they cannot obtain the information by other means because:

> Ford has provided Plaintiffs with the names and addresses of the other parties, their counsel, and in some cases, their experts. Plaintiffs can contact the attorneys in those cases for further information; they can obtain case materials, photographs, and documents that might have been maintained by those lawyers to provide the additional information Plaintiffs seek; and, if the plaintiffs in those cases identified experts, they can take those experts' depositions, as well as the plaintiffs' depositions themselves.

14

> Absent a showing that they cannot obtain materials from these other sources, Plaintiffs cannot overcome Ford's claim of privilege. See Bradley v. Wal-Mart Stores, Inc., 196 F.R.D. 557, 558 (2000) (no substantial need shown for production of surveillance videotape where other evidence regarding plaintiff's injuries was available).

(Doc. #92 at 13) In Bradley v. Wal-Mart Stores, Inc., 196 F.R.D. 557 (E.D. Mo. 2000) the issue was whether a surveillance tape, which the defendant did not intend to use at trial, was subject to production as evidence of the plaintiff's injuries. The court upheld the claim of work product privilege and citing cases from other jurisdictions, held that where a plaintiff had her own testimony, the testimony of other witnesses, medical records, and testimony and reports of treating physicians and retained experts, the plaintiff has no need of the work product video tape. Bradley, 196 F.R.D. at 558.

Here the information sought is not within plaintiffs' control. Further counsel has submitted information concerning why the information is relevant and affidavits concerning his efforts to obtain other information. (See doc. #88 at 8-10; doc. #94-1 (Pl. Ex. 50); doc. #94-2 (Pl. Ex. 51)) Accordingly, the Court finds that the factual information contained in the documents listed on the March 29, 2017 privilege log, which are not subject to the attorney-client privilege, as described above, must be produced as plaintiffs have satisfied the requirements for overcoming the claim of work product privilege.

2. June 20, 2017 Privilege Log

This privilege log claims the work product privilege for photographs taken of vehicles following accidents. (See Doc. #97-1 Log Entries 1, 2, 3, 5, and 6) Plaintiffs contend these cases involve similar accidents in that the airbags are alleged not to have deployed after moderate to severe frontal impacts and that photographic evidence of the condition of the fuse and other parts of the vehicles are essential to their claim. Ford asserts the work product privilege for photographs

taken in the Bryant, Dunwoody and Hood cases as well as for the initial draft of an expert report (doc. #97-1 Log Entry 4). As discussed above, plaintiffs have established a substantial need for OSI material and have offered evidence that counsel for plaintiffs has attempted to obtain the photographs from other sources and was not able to do so because of the age of the cases. (Doc. #94; doc. #94-1) Accordingly, consistent with the above discussion, the Court finds that the photographs in the Bryant, Dunwoody, and Hood cases, Log Entries 1, 2, 3, 5, and 6, should be produced.

The initial draft of the expert report in the Bryant case, log entry 4, is not discoverable. The initial draft of the expert report contains conclusions by the expert which were provided to Ford's counsel for purposes of litigation but were never subsequently used in the course of the litigation. Plaintiffs have not shown a need for such information and, therefore, the privilege applies.

### III. SUSPENSION ORDERS

Plaintiffs' initial motion to compel and suggestions in support, doc. ##48 and 49, sought to compel Ford to produce suspension order 859981 or any other suspension orders referencing the frontal air bag system of any Ranger and Mazda B-Series trucks for the model years 1996 through 2003 as well as the GIS1 or any other documents concerning Ford's document retention policy. (Doc. #49 at 7-11; See doc. #49-2, RFP ## 5, 6) Plaintiffs claim to be entitled to the suspension orders along with the document retention policy so that they can ascertain what categories of relevant information are available. (Doc. #49 at 7) Ford responded to the request for suspension orders by claiming that the documents requested were irrelevant and subject to the attorney-client and work product privileges and provided a privilege log. (Doc. #75 at 9-14; doc. #75-1 Response to RFP #5; doc. #49-8) Ford objected to the production of the document

retention policy, GIS1, on the basis of relevancy, but no privilege claims were raised. (See doc. #75-1 Response to RFP #6)  Since the filing of the motion to compel, it is the Court's understanding that Ford has produced its document retention policy. (Doc. #85, at 63:15-16) Thus, only the suspension orders are at issue. And at least as to one suspension order, plaintiffs' counsel has copies based upon the unrestricted production of the document in earlier litigation.

Ford produced a privilege log (doc. #49-8) for the suspension orders and submitted the documents for in camera review.  In the Court's view, the privilege log is wholly inadequate. It has one entry listed for which information is provided.  That entry is described as "859981 (various versions and including 95P000002, 96P00002)."  However, pursuant to that one entry, the following documents were submitted for in camera review.  Exhibits K, L, M and N which appear to be documents ##75-11, 75-12, 75-13 and 75-14, which had already been filed as attachments to Ford's suggestions in opposition to the motion to compel.  Thus, these documents are not properly part of the in camera submission.  The actual documents which the Court has reviewed in camera are all titled SO 859981 v and then a number from 23 to 35.  Each is the suspension order for a particular date from December 19, 2007 to December 16, 2014.

The Court has reviewed each of the documents, along with the argument and cases submitted or referenced by the parties.  It should be noted that many of the cases cited by both parties simply denied or granted the request for suspension orders without explanation.  In the Court's view, the most cogent discussion of the attorney-client privilege as it pertains to these types of suspension orders is found in the Order of the Discovery Commissioner No. 1 in <u>Sonny J. Symes v. Ford Motor Company</u>. (Doc. #49-13)  The evidence offered to support or oppose the attorney-client privilege issues in <u>Symes</u> was very similar to the information provided to this

Court. Attached to the briefing in this case is an affidavit of an attorney in the Office of General Counsel stating in part that:

> 12. The legal advice that I provide, and the mental impressions, conclusions, opinions, and legal theories set out in Suspension Orders are distributed to employees within the company so that the legal advice contained therein may be implemented. Ford employees receiving notification about Suspension Orders are informed that these communications are protected by the attorney-client privilege.

(Pride Affidavit, Doc. #75-11 at ¶12) In Symes, similar information was provided by the affidavit of an attorney in the OGC stating that the suspension order consisted of legal advice from the OGC to their "client." (Doc. #49-13 at 20-21) And, as in Symes, plaintiffs in this case submitted portions of the June 21, 2005 deposition of Elizabeth Adkins, Director of Ford's Global Information Management Program. (Doc. #78-12) Ms. Adkins testified that anyone at Ford had access to the OGC database to see suspension orders. (Doc. #78-12 at 14) She further indicated that approximately 170,000 people worldwide would have to comply with the suspension order program. (Doc. #78-12 at 15)

In evaluating the claim of attorney-client privilege based upon this type of evidence, the Commissioner in Symes found that the claim that suspension orders reflect counsel's mental impressions and legal theories "vastly overstates what can reasonably be gleaned" from the documents. (Doc. #49-13 at 30) The Commissioner further concluded:

> It bears repeating that Suspension Orders appear to do nothing that [sic] direct that all documents which may relate to a product claim should be preserved rather than destroyed. There is no evident "selection process" by which documents might be identified as either helpful or potentially detrimental to Ford's prospective presentation of its defenses. There is nothing reflecting how Ford counsel might evaluate the company's responses to discovery.
>
> ***
>
> Advice on the law seems associated with something inherently *strategic* rather than something that is purely procedural (such as keeping records rather

> than tossing them out). A directive to an employee to "keep this" seems far more a matter of routine business practice associated with normal document retention. Any underlying discussions lawyers may have with any other company personnel leading up to the creation of the directive are not included. It is accordingly determined that the Suspension Orders do not rise to the level of "legal advice" necessary as part of the attorney-client privilege.

(Doc. #49-13 at 30)

A suspension order is a modification of the normal document retention policy, for which Ford did not assert a claim of privilege. The Court agrees with the reasoning of <u>Symes</u> that there is no evident selection process by which documents may be identified as helpful or detrimental to Ford's presentation of its defense. And there is nothing in the documents reflecting how Ford's counsel might evaluate the company's response to discovery. (Doc. #49-13 at 30) Thus, the Court rejects defendant's attorney-client privilege claim for the suspension orders.

However, defendant has also challenged the relevancy of the suspension orders as well as asserting a work product privilege for the documents. Not only must the party seeking discovery demonstrate the relevancy of any information sought through the discovery process, but before the work product privilege may be overcome, plaintiffs must show a need for the information. In <u>Symes</u>, the Commissioner concluded that the plaintiff had demonstrated a need for the suspension orders, thereby overcoming the work product doctrine because the plaintiff intended to offer an instruction at trial on spoliation based upon the alleged destruction of certain test data. (Doc. #49-13 at 33) The Court recognizes that the issue of spoliation has been present when the production of suspension orders has been ordered in some of the other relevant caselaw.

Plaintiffs have raised the issue of spoliation in briefing. (<u>See</u> doc. #94, referring to exhibit numbers 44 (doc. #88-5) and 45 (doc. #88-6), which were attached to an earlier brief (doc. #88)). In the Court's view, documents 44 and 45 have not been properly authenticated or even explained by plaintiffs' counsel. Thus, the Court will not infer that spoliation is an issue in this

case based upon the current status of the briefing. However, the parties in this case have had ongoing and contentious discovery disputes for the last year. These disputes range from the format of the document production which necessitated plaintiffs hiring a third party vendor to try and make the electronic production usable and has extended to what was relevant OSI material. The initial discovery requests were submitted over one year ago. According to plaintiffs, over 3,700 documents have been produced by Ford since the filing of the motion to compel. (Doc. #88 at 2) The Court notes that Ford did not produce privilege logs as to OSI material until after several court conferences and a motion to compel had been filed. Furthermore, defendant admits that outside counsel has destroyed some files. (Doc. #85 at 29:9-10) Given the many discovery issues which have unnecessarily extended the time for resolving this case, the Court believes that plaintiffs have demonstrated the relevancy and their substantial need for the suspension orders in order to try and determine as quickly as possible if all relevant documents have been produced[7].

Accordingly the Court finds that the suspension orders, referred to as SO 859981 v and then a number from 23 to 35, should be produced.

Based on the foregoing, it is

ORDERED that Plaintiffs' Motion to Compel Ford's Responses to Plaintiffs' Request for Production and Plaintiffs' Rule 30(b)(6) Topics (doc. #48) is GRANTED IN PART and DENIED IN PART consistent with the above analysis.

/s/ Sarah W. Hays
SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE

---

[7] The suspension orders each have a paragraph of information describing generally the types of litigation that have led to the suspension order. To the extent that defendant believes this information somehow reflects confidential information, that paragraph may be redacted.