# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

| | | |
|---|---|---|
| STEVEN W. TABER | ) | |
| RENE TABER, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FORD MOTOR COMPANY | ) | Case No.: 4:16-cv-00162-SWH |
| | ) | |
| Defendant. | ) | |

## FORD MOTOR COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR FURTHER RULE 37 SANCTIONS

Sherry A. Rozell, Mo. Bar #34131
Steven E. Ward, Mo. Bar #43285
MCAFEE & TAFT
Two West 2nd Street, Suite 1100
Williams Tower II
Tulsa OK 74103
(918) 587-0000; (918) 599-9317 (fax)
sherry.rozell@mcafeetaft.com
steve.ward@mcafeetaft.com

**ATTORNEYS FOR DEFENDANT
FORD MOTOR COMPANY**

January 26, 2018

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................1

II.   STATEMENT OF FACTS ....................................................................................2

III.  ARGUMENTS.......................................................................................................6

    A.  Plaintiffs are Not Entitled to Sanctions Under Rule 37 .................................6

        a.  Rule 37(b)(2)(A) is Not Applicable Because Ford has Not Violated an Order of this Court and Plaintiffs Cannot Show Prejudice...............................6

            1.  There is No Court Order .................................................................7

            2.  There is No Prejudice......................................................................8

        b.  Plaintiffs are Not Entitled to Sanctions Under Rule 37(c)(1) Because Ford has Not Failed to Disclose or Supplement an Earlier Response.....................11

        c.  Rule 37(a)(5) does Not Apply........................................................................15

        d.  Rule 37(e) Cannot Support Sanctions Against Ford........................................15

        e.  Plaintiffs Failed to Comply with Local Rule 37.1 and the Parties' Joint Proposed Scheduling and Trial Order................................................................17

    B.  The Imposition of Sanctions is Inappropriate Under the Circumstances ...................17

    IV. CONCLUSION...................................................................................................19

# TABLE OF AUTHORITIES

*Alabama Aircraft Indus., Inc. v. Boeing Co.*,
  319 F.R.D. 730 (N.D. Ala. 2017), *motion to certify appeal denied*,
  2017 WL 4572484 (N.D. Ala. Apr. 3, 2017) ....................................................16

*Baker v. Gen. Motors Corp.*,
  86 F.3d 811 (8th Cir. 1996), *rev'd in part on other grounds sub. nom.* ...........10

*Baker by Thomas v. Gen. Motors Corp.*,
  522 U.S. 222 (1998), *and vacated in part on other grounds*
  138 F.3d 1225 (8th Cir. 1998) ...........................................................................10

*Bry v. City of Frontenac*,
  2015 WL 9275661 (E.D. Mo. Dec. 18, 2015), *aff'd sub nom.*
  *Bry v. City of Frontenac*, 660 F. App'x 485 (8th Cir. 2016).............................16

*Comstock v. UPS Ground Freight, Inc.*,
  775 F.3d 990 (8th Cir. 2014) .............................................................................10

*Davenport v. Charter Communications, LLC*,
  2016 WL 3743187 (E.D. Mo. Jul. 13, 2016) .......................................................9

*Firefighters' Ret. Sys. v. Citco Grp. Ltd.*,
  2018 WL 276941 (M.D. La. Jan. 3, 2018)..........................................................19

*Fox v. Studebaker-Worthington, Inc.*,
  516 F.2d 989 (8th Cir. 1975) ...............................................................................7

*Holmes v. Trinity Health*,
  729 F.3d 817 (8th Cir. 2013) ...............................................................................7

*KC Ravens, LLC v. Micah Energy Corp.*,
  2014 WL 12623661 (W.D. Mo. Dec. 19, 2014)...................................................8

*Lael v. Six Flags Theme Parks, Inc.*,
  2014 WL 4092261 (E.D. Mo. Aug. 15, 2014)............................................8, 9, 12

*Marie v. Am. Red Cross*,
  2013 WL 1183328 (S.D. Ohio Mar. 20, 2013).....................................................8

*Prokosh v. Catalina Lighting, Inc.*,
  193 F.R.D. 633 (D. Minn. 2000)..........................................................................8

*Reinsdorf v. Skechers U.S.A., Inc.*,
  296 F.R.D. 604 (C.D. Cal. 2013) .......................................................................19

ii

*Sokos v. Hilton Hotels Corp.*,
    283 F.Supp.2d 42 (D.D.C. 2003) ........................................................................7

*Thornburg v. Open Dealer Exch.*,
    2018 WL 340050, (W.D. Mo. Jan. 9, 2018) ........................................................7

*Wal-Mart Stores, Inc. v. Cuker Interactive, LLC*,
    2017 WL 239341 (W.D. Ark. Jan. 19, 2017) ....................................................16

*Wegener v. Johnson*,
    527 F.3d 687 (8th Cir. 2008) .......................................................................10

*White v. U.S.*,
    2018 WL 339414 (E.D. Mo. Jan. 9, 2018) .................................................. 16-17

*Zamora v. Stellar Mgmt. Grp., Inc.*,
    2017 WL 1362688 (W.D. Mo. Apr. 11, 2017) .......................................... 15-16

## OTHER AUTHORITIES

Fed.R.Civ. P. 26 ............................................................................................11, 12, 18

Fed.R.Civ.P. 37 ...................................................................................... *passim*

L.R. 7.0(d)(1)(a) ........................................................................................... 2

L.R.7.0(d)(2) ................................................................................................2

Ford Motor Company ("Ford") responds to Plaintiffs' Motion with Suggestions in Support of Their Motion for Further Rule 37 Sanctions as follows:

## I.     <u>INTRODUCTION</u>

Without a discovery request seeking the information about which Plaintiffs complain, a meet and confer, a telephone conference with the Court, a motion to compel, or a Court Order, Plaintiffs first file a motion for sanctions, asking this Court to impose a "panoply" of sanctions pursuant to Fed.R.Civ.P. 37(b)(2)(A)(i)–(iii), (v)–(vii), or, alternatively, 37(a)(5) or 37(c)(1). Plaintiffs articulate only two alleged discovery disputes to support their request for sanctions at the eleventh hour before trial: (1) Ford's alleged untimely production of the Sensor Design Manual, which was relied upon by Plaintiffs' design expert and discussed at several depositions; and (2) Ford's alleged failure to produce Failure Mode and Effects Analysis[1] ("FMEA") documents.

The Sensor Design Manual is not responsive to Plaintiffs' original discovery requests, was not the subject of Plaintiffs' Motion to Compel [Doc. 48], was not addressed at any hearing or conference with this Court, and, most importantly, was not addressed in the Court's September 29, 2017 Order. [Doc. 109]. Further, Plaintiffs have had the relevant engineering specifications since 2016, Plaintiffs' expert had the opportunity to give testimony and supplement his opinions using the Sensor Design Manual, and Plaintiffs' counsel was able to cross-examine Ford's corporate representative and expert with respect to the Manual.

The FMEA applicable to the diagnostic monitor was not addressed in Plaintiffs' Motion to Compel [Doc. 48] and was not at issue in the Court's September 29, 2017 Order [Doc. 109].

---

[1] A Failure Mode and Effects Analysis is an analysis of a product or process that considers the effects of potential ways that the design could be impacted by the external and internal factors and develops countermeasures to control or reduce the effects of those factors.

Ford has explained to Plaintiffs and this Court at almost every conference and hearing dating back to November 20, 2016, that to the extent an FMEA applicable to the diagnostic monitor may have existed at one time, it was generated by a division of Ford that was spun off into Visteon, then eventually sold to Autoliv.[2]  The FMEA is not in Ford's custody, possession, or control and Ford cannot "refuse" to produce what it does not have.  Had Ford been able to locate the document, it certainly would have produced it.

In a further effort to divert attention from the lack of merit of their Motion, Plaintiffs cite miscellaneous discovery orders from other jurisdictions that have nothing to do with the arguments they make or discovery in this case.  As it relates to Ford, at most, the list of sanction orders shows this:  of the over 50,000 suits that Ford has defended since 1980, trial judges in a handful of cases were critical of Ford's action, and in well over 99.9% of the cases, there was no suggestion of impropriety by Ford, let alone any sanction order.  That certainly does not establish a pattern of deliberate misconduct by Ford as Plaintiffs assert, and certainly there is no evidence of such conduct in this case.

## II.    STATEMENT OF FACTS[3]

Ford has engaged in discovery in this case in good faith, producing numerous documents in response to Plaintiffs' voluminous requests.  Plaintiffs' claims that Ford has engaged in

---

[2] If Plaintiffs have allegations beyond those involving the Sensor Design Manual and FMEA documents, they are unclear.  Plaintiffs suggest a "course of discovery misconduct" by Ford, but fail to provide any specificity by which Ford can respond to such suggestions.  For example, Plaintiffs suggest that Ford failed to timely and completely meet its discovery obligations at issue in Plaintiffs' January, 2017 Motion to Compel [Doc. 48] and the Court's September 29, 2017 Order [Doc. 109], but provide no other information in the Motion about this alleged failure.  The Motion to Compel and September 29, 2017 Court Order relate exclusively to lawsuit and claim files and Ford's privilege log relating to those files and suspension orders.  They do not relate to the documents at issue in this Motion.  If Plaintiffs specify issues beyond those involving the Sensor Design Manual and FMEA as articulated in this Motion, Ford reserves the right to respond to such issues.

[3] Ford submits that this Statement of Facts does not count towards the 15-page limit for motions in support of suggestions in L.R. 7.0(d)(1)(a) pursuant to L.R.7.0(d)(2).

discovery misconduct are simply not supported by the record. Rather, the record demonstrates that while Plaintiffs have almost routinely raised discovery issues, most, if not all, have been raised without any attempt to meet and confer and were easily resolved after the parties conferred, as is the course that the Federal Rules, particularly as amended, contemplate. *See e.g.* [Nov. 10, 2016 transcript at p. 11, Doc. 41]; [Mar. 16, 2017 transcript at p. 18, 28, 32, 34-35, 38-39, and 57, Doc. 83]; [Nov. 3, 2017 transcript at p. 3-4 and 8, Doc. 124; Ex. 8]. Here, Plaintiffs claim that the documents at issue were not even requested in any formal discovery request, but in a letter dated July 18, 2016, as follows:

1.    Wire routings drawings and specifications for subject 1996 Ranger;

2.    Specific wire, wire routing, connector and other specifications related specifically to safety system interconnections.

[Doc. 160 p. 5, Ex. 6].

In August of 2016, Ford produced the wiring diagrams from the Workshop Manual and specific engineering specifications ES-F0DB-14A686-AA (sensor assemblies), ES-14A121-AA (wiring harness), and ES-F42F-14B215 (diagnostic monitor). [Doc. 160, Exs. 7, 8]. Although an informal request, in the spirit of cooperation, Ford produced the information requested.

Plaintiffs now claim that in response to this informal request for wiring diagrams and specifications, Ford should have produced the Sensor Design Manual, which is neither a drawing nor a specification. Ford's Sensor Design Manual itself [Doc. 160, Ex. 10] clearly identifies what the document comprises, as follows:

The purpose of the airbag sensor design manual is to provide a guideline for the development of an airbag sensor system for a specific car-line.

The airbag sensor design manual contains or references the requirements as a guideline to develop an airbag sensor system for a specific carline. The manual contains design, development, and release requirements for a new airbag sensor

3

system. Specific requirements are contained in the manual while general requirements are contained or referenced.

[Doc. 160, Ex. 10 at AAAZ 2412].

The Manual is not a specification, which is what Plaintiffs requested. However, Ford notes that the specifications referenced in the Sensor Design Manual *are the same specifications that Ford produced in August, 2016*, meaning Plaintiffs have had these specifications for seventeen months. Specifically, ES-FODB-14A686-AA (sensor assemblies) is referenced on AAAZ 2423 and AAAZ 2454, ES-14A121-AA (wiring harness) is referenced on AAAZ 2454, and ES-F42F-14B215 (diagnostic monitor) is referenced on AAAZ 2454. Accordingly, the same specifications required by the Manual were produced to Plaintiffs at the outset of this case.

Further, Ford's engineer and designated 30(b)(6) corporate representative testified that the Sensor Design Manual is a general guideline and not specifications, which were previously produced to Plaintiffs:

> A: I've reviewed the Sensor Design Manual at that time, and it sounds similar to that. It is more a general guideline. It does not -- the important specification documents already have been produced to you, and as part of that collection, I went and looked at it. The engineering specifications relating to this particular sensor is reflected or was also part of that same document, and those engineering specifications have already been provided to you. [R. Krishnaswami deposition, Jan. 4, 2018, p. 105:15 – 106:3; Ex. 1].
> ***
> A: It [the Sensor Design Manual] is a collection of manual to remind engineers, like you know, these are all the things you should consider. There is a specification attached to this that's another 30/40 pages. That was already produced in this matter long before. That is the actual specification that applies to the sensor." [R. Krishnaswami deposition, Jan. 4, 2018, p. 203:14-25; Ex. 1].
> ***
> A: The Sensor Design Manual just reminds guidelines. Obviously, we put it in writing so that when many engineers are working on different programs, they have some kind of a reminder that these tasks need to be completed. [R. Krishnaswami deposition, Jan. 4, 2018, p. 208:11-15; Ex. 1].

4

Regarding the FMEA documents, Ford has searched for and could not locate FMEA documents related to the diagnostic monitor in 1996 Ford Ranger vehicles. On October 3, 2016, Ford amended its Initial Disclosure to identify Ford's ELD (Electronics Lighting Division or Electronics Division) as the manufacturer of the diagnostic monitor in the 1996 Ford Ranger. [Doc. 25]. The Disclosure also explained the spin-off of that division to Visteon and subsequent sale to Autoliv. As early as November 10, 2016, in the parties' first conference with this Court, Ford's counsel discussed the spin-off of this electronics division to Visteon and the fact that Autoliv was now in possession of some of the documents that Plaintiffs sought. [Nov. 10, 2016 transcript at p. 21-22, Doc. 41].

The fact that Ford could not locate certain documents pertaining to the design and development of the diagnostic monitor was specifically discussed at the April 12, 2017 hearing:

> Mr. Ward: And so the documents that went along with those design documents that went along with the transfer of that division followed that sale. Ford has checked. It doesn't have those documents any longer, the design documents about the Diagnostic Monitor, because it sold that portion of the business. And so it doesn't have them. Not by operation under the suspension order or by operation of GIS1 but because the business was sold.

[Apr. 12, 2017 transcript at p. 73, Doc. 85]. It is disingenuous for Plaintiffs to ask this Court to sanction Ford for not having documents, the absence of which Ford explained to Plaintiffs and this Court several times, including fourteen months ago.

Autoliv's corporate witness Mr. Borninski was an engineer at Ford in the electronics division that designed and developed the diagnostic monitor in 1996 Ford Ranger vehicles. His testimony about documents is consistent with Ford's position that documents relating to the design and development of the diagnostic monitor would have been transferred to Visteon:

Q: When you left Ford in 2000, did you come directly to Autoliv?

A: So in 2000, Ford spun off Visteon into a separate company, and so I was with the Visteon part that was formerly Ford ELD, became Visteon. So that was the transition I made in 2000.
Q: To Visteon?
A: Yes.
Q: And how long were you with Visteon?
A: For two years.
Q: So that would have been 2000 to 2002?
A: Correct.
Q: And then Autoliv?
A: Correct.
***
Q: Okay. When you went to Visteon, did the diagnostic monitor technology go from Ford to Visteon?
(objections)
Q: The engineering history of it.
(objections)
A: There was documentation on preexisting designs that went from Ford to Visteon.

[Deposition of T. Borninski, p. 22:4-17, 23: 10-23, Ex. 2]

Mr. Borninski further testified:

A: I go back to this point there were several entities involved in this. So there was first Ford ELD, and then Ford ELD likely had their own record retention policy and then Visteon and then Autoliv.; So in their two transitions, there were documents that were transferred from one company to another, and this is where it's sometimes difficult to find these documents because they've been through these two transitions and, you know, were stored in a variety of locations, sometimes stored someplace temporarily and then someplace permanently, and it is a nontrivial task to actually find all these documents.

[Deposition of T. Borninski, p. 55:15-56:2, Ex. 2][4]

## III.     <u>ARGUMENTS</u>

### C.   <u>Plaintiffs are Not Entitled to Sanctions Under Rule 37</u>

#### a.   Rule 37(b)(2)(A) is Not Applicable Because Ford has Not Violated an Order of this Court and Plaintiffs Cannot Show Prejudice

---

[4] See also Deposition of T. Borninski, p. 35:25-36:4, Ex. 2. "So I recalled from the transitions we had from Ford ELD to, to Visteon and from Visteon to Autoliv, I recalled in some cases where the various people that were responsible for transferring those documents, where they had put them."

6

### 1. There is No Court Order

Plaintiffs' Motion urges the Court to grant sanctions against Ford pursuant to Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure, which provides that "[i]f a party … fails to obey an order to provide or permit discovery … the court where the action is pending may issue further just orders." However, Plaintiffs do not point to any Order of this Court upon which the imposition of sanctions could be based; rather, Plaintiffs broadly assert that Ford has violated the Court's Scheduling Orders, discovery conference agreements, and directives. Doc. 160, pg. 1, ¶ 1. The Court has issued only one Order in this case, dated September 29, 2017 ("The Order"). [Doc 109]. The Order did not address the issues raised in Plaintiffs' Motion, namely the Sensor Design Manual or the FMEA documents. Plaintiffs do not assert that Ford violated this Order or any other.

In the absence of a specific order related to the particular discovery at issue, i.e., the Sensor Design Manual or FMEA documents, Plaintiffs are not entitled to sanctions under Rule 37(b)(2)(A). *Fox v. Studebaker-Worthington, Inc.*, 516 F.2d 989, 995 (8th Cir. 1975) ("Fed.R.Civ.P. 37(b) provides comprehensively for sanctions for failure to obey discovery orders. It has no application if there has not been a court order."); *Thornburg v. Open Dealer Exch.*, 2018 WL 340050, *2 (W.D. Mo. Jan. 9, 2018) (because the defendant failed to comply with Local Rule 37.1, there was not an order compelling discovery, and, consequently, the court declined to impose sanctions under Rule 37); *Holmes v. Trinity Health*, 729 F.3d 817, 820-21 (8th Cir. 2013) (affirming the district court's refusal to impose Rule 37 sanctions and declining to adopt the position that the court's preliminary scheduling order was a type of order contemplated by Rule 37); *see also Sokos v. Hilton Hotels Corp.*, 283 F.Supp.2d 42, 55 (D.D.C. 2003) (holding that "since the Court had not issued an order to redress a discovery violation

7

committed by the defendants, the plaintiff's counsel could not seek any relief under this rule." (citing Rule 37(b)(2)); *and Marie v. Am. Red Cross*, 2013 WL 1183328 (S.D. Ohio Mar. 20, 2013) (finding that sanctions under Rule 37(b)(2)(A) were inappropriate where the plaintiff did not refer to an order of the court that specifically required the discovery sought).

Plaintiffs rely on *Prokosh v. Catalina Lighting, Inc.*, 193 F.R.D. 633 (D. Minn. 2000) to argue that Ford should be subject to the "full planopy [sic] of Rule 37." Doc. 160, pg. 7, ¶ 13. Plaintiffs' reliance on this case is misplaced. The *Prokosh* court did not rule on the imposition of Rule 37 sanctions, as Plaintiffs request here. Further, the language cited by Plaintiffs is dicta, quoted by the court from another opinion as part of a warning to the defendant that if it were later found that its discovery responses were untrue, the defendant would face sanctions under Rule 37. *See id*. at 637. The *Prokosh* court did not consider or apply any of the legal standards for imposing Rule 37 sanctions, rendering the case inapposite. *See generally id*.

### 2. There is No Prejudice

In order for the Court to impose sanctions, the party seeking them must show that it has been prejudiced by the opposing party's discovery conduct. *See KC Ravens, LLC v. Micah Energy Corp.*, 2014 WL 12623661 (W.D. Mo. Dec. 19, 2014) ("Rule 37(b)(2)(A) authorizes sanctions where there is (1) an order compelling discovery, (2) a willful violation of that order, and (3) prejudice to the other party."); *Lael*, 2014 WL 4092261, at *5 (in deciding whether sanctions are available under Rule 37(c), the court must consider the surprise and prejudice to the opposing party, if any, from the discovery violation at issue). Despite Plaintiffs' claim that Ford's "discovery misconduct" has "prejudiced" them, Plaintiffs cannot point to a single, concrete example of prejudice that they have suffered as a result of Ford's discovery conduct.

8

Plaintiffs emphasize Ford's production of the Sensor Design Manual after certain Ford witnesses were already deposed. Doc. 160, pg. 2-3, ¶ 4. However, since receiving the Manual, Plaintiffs have deposed Ford's corporate representative and expert Ram Krishnaswami twice regarding its content, as well as expert witness Thomas G. Livernois about the Manual. [Deposition of R. Krishnawami, Jan. 4, 2018, p. 106-108, 165-166, 204-209, Ex. 1]; [Deposition of R. Krishnawami, Jan. 23, 2018 draft, p. 42-50, 57-59, and 61, Ex. 3]; [Deposition of T. Livernois, Jan. 19, 2018 draft, p. 103-117, Ex. 4.] Further, Plaintiffs' expert gave his opinions regarding the Sensor Design Manual during his supplemental deposition. [Deposition of C. Caruso, Dec. 21, 2017, p. 21, 118-134, 246-251, Ex. 5]

Regarding the FMEA documents that Plaintiffs seek, as Ford has explained, the FMEA is not in Ford's possession and control. Plaintiffs cannot be prejudiced from Ford failing to produce something it does not have. Further, Ford's corporate representative and expert Ram Krishnaswami testified that the testing conducted and produced by Ford demonstrates that failure mode effects and analysis processes were followed. [Deposition of R. Krishnaswami, Jan. 23, 2018 draft, p. 62-63, Ex. 3].

Any prejudice Plaintiffs may have experienced (which Ford denies) could be nothing more than minimal, and was cured by Plaintiffs' deposing of their expert and Ford regarding the Manual. *See **Lael***, 2014 WL 4092261, at *6 (holding that any harm resulting from the plaintiffs' failure to timely disclose the report at issue could be cured by granting the defendant additional time to disclose its own experts and produce them for depositions); *and **Davenport v. Charter Communications, LLC***, 2016 WL 3743187 (E.D. Mo. Jul. 13, 2016) (holding that although the plaintiff's expert gave new opinions at a deposition, the defendant suffered no ongoing prejudice

or surprise, and that any prejudice created by the late disclose of opinions could be cured by a second opportunity for a deposition).

Further, Ford attempted to resolve the issues in Plaintiffs' Motion by offering to produce a 30(b)(6) deponent to address questions Plaintiffs may have regarding the Sensor Design Manual, and agreeing not to object to a supplemental report by Plaintiffs' expert Chris Caruso regarding to the Sensor Design Manual and forgoing a supplemental deposition of Mr. Caruso regarding the supplemental report. *See* email dated January, 19, 2018, Ex. 6. Plaintiffs dismissed Ford's offer, leading one to wonder if Plaintiffs are truly interested in the discovery they claim to seek, or whether the end goal is to prolong discovery disputes in an effort to distract from the merits of this case.

Evidentiary sanctions and the preclusion of evidence are among the harshest available sanctions. Severe sanctions, such as evidence preclusion, striking of one's pleadings, or dismissal, should not be imposed absent willful action, bad faith, and consideration of other lesser sanctions. *See **Wegener v. Johnson***, 527 F.3d 687, 692 (8th Cir. 2008) (stating that the exclusion of evidence is a harsh penalty and should be used sparingly); *and **Comstock v. UPS Ground Freight, Inc.***, 775 F.3d 990, 992 (8th Cir. 2014) (stating that under Rule 37, dismissal as a discovery sanction is only available if there is an order compelling discovery, a willful violation of that order, and prejudice, and that the court must investigate whether lesser sanctions would suffice unless bad faith is found). In ***Baker v. Gen. Motors Corp.***, 86 F.3d 811 (8th Cir. 1996), *rev'd in part on other grounds sub. nom. Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222 (1998), *and vacated in part on other grounds* 138 F.3d 1225 (8th Cir. 1998), the district court granted the plaintiff's motion for sanctions and delivered an instruction to the jury

presuming defect.  On appeal, the Eighth Circuit held the district court abused its discretion in

entering the sanction, stating:

> There is a strong policy favoring a trial on the merits and against depriving a party
> of his day in court, and the sanction in this case failed to achieve a balance
> between the policies of preventing discovery delays and deciding cases on the
> merits … GM was not given the right to be heard. Instead, the jury was asked,
> essentially, to place a monetary value on the loss of human life. Before issuing
> such a sanction, fairness required the court to consider whether a more "just and
> effective" sanction was available … In this situation, other, less severe sanctions
> (including monetary fines against GM and continuances for the plaintiffs) were
> both available and appropriate … While we do not condone GM's failure to meet
> its discovery obligations, we find that the sanction chosen by the district court was
> simply too severe for the facts presented and should have been drawn more
> narrowly.

*Id*. at 817.

As the record shows, Plaintiffs are not entitled to such harsh sanctions against Ford,

particularly as there is no discovery order that Ford could said to have violated, nor is there any

evidence of bad faith.  Plaintiffs have suffered no prejudice and sanctions are not warranted.

### b. Plaintiffs are Not Entitled to Sanctions Under Rule 37(c)(1) Because Ford has Not Failed to Disclose or Supplement an Earlier Response

Alternatively, Plaintiffs seek sanctions under Rule 37(c)(1), which provides that "[i]f a

party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party

is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or

at a trial, unless the failure was substantially justified or is harmless."  Doc. 160, pg. 13.

Here, disclosure of the Sensor Design Manual was not required as part of Ford's Initial

Disclosures—which is the "disclosure" referenced by subsection (c)—because Ford does not

contend that the Sensor Design Manual supports its defenses.  *See* Rule 26(a)(1)(ii).  Further,

because Plaintiffs did not propound a discovery request to which the Sensor Design Manual was

responsive,[5] Ford did not fail to provide information pursuant to Rule 26(e), which requires supplementation or correction of a disclosure or response to an interrogatory, request for production, or request for admission if a party learns that its disclosure or response is incomplete or incorrect. *See* Rule 26(e)(1)(A). As for Plaintiffs' contention that Ford has refused to produce certain FMEA documents, Plaintiffs have provided nothing but rank speculation that Ford is withholding relevant FMEA documents. Ford has complied with its discovery obligations, and sanctions pursuant to Rule 37(c)(1) are inappropriate.

Even if the Court were to determine that subsection (c)(1) applied, there is substantial justification for Ford's actions. Whether a failure to comply with the disclosure requirements of Rule 26(a) and (e) is justified or harmless may turn on several factors, including: "(i) the reason for noncompliance; (ii) the surprise and prejudice to the opposing party; (iii) the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial; and (iv) the importance of the information or testimony." *Lael v. Six Flags Theme Parks, Inc.*, 2014WL 4092261, *5 (E.D. Mo. Aug. 15, 2014).

Concerning the reason for alleged noncompliance (which Ford denies), as explained above, Ford complied with its discovery obligations. Further, Ford produced the Manual even though there was no discovery request to which it was responsive. Regarding the FMEA documents that Ford allegedly refuses to produce, Ford cannot produce what it does not have. As for prejudice, Plaintiffs were able to question Ford's expert regarding the Service Design Manual twice, and their own expert was permitted to testify regarding the Manual as well and expressed opinions about it, thereby mitigating any prejudice Plaintiffs claim may have resulted.

---

[5] Of note, Plaintiffs Motion does not identify any discovery request to which they contend Ford should have produced the Service Design Manual beyond claiming that Plaintiffs "served Rule 34 discovery geared to collect the engineering history and failure modes and effect analysis (FMEA) applicable to the airbag system in the [Plaintiffs'] Ranger." Doc. 160, pg. 5-6, ¶ 11.

Plaintiffs' expert, Christopher Caruso, testified extensively about the Sensor Design Manual at his deposition, noting not only that the Manual did not change his opinion, but it actually supported his opinion.

> A: So I put those Post-it notes on critical pages for us to discuss today about how they not only support my opinions but also how this information correlates very well with what I assumed Ford would have had at the time of the design and development of this vehicle.

[Deposition of C. Caruso, Dec. 21, 2017, p. 21:16-25, Ex. 5].

Mr. Caruso went on to talk about the Sensor Design Manual for sixteen pages of the deposition transcript with Ford's counsel and for five pages with Plaintiffs' counsel. [Deposition of C. Caruso, Dec. 21, 2017, p. 118-134, 246-251, Ex. 5].

Further, Plaintiffs' counsel was given the opportunity to cross-examine Ford's witnesses about the Sensor Design Manual. Mr. DeFeo questioned Mr. Krishnaswami at his January 4, 2018 corporate representative deposition about how the Sensor Design Manual addresses wire routing [Deposition of R. Krishnawami, Jan. 4, 2018, p. 106:4-108:24, 204:13-209:22, Ex. 1]; and whether the wiring is designed in a way that "complies" with the Sensor Design Manual [Deposition of R. Krishnawami, Jan. 4, 2018, p. 165:22-166:1, Ex. 1]. Mr. DeFeo questioned Mr. Krishnaswami more extensively at his January 23, 2018 expert deposition. [*See* Deposition of R. Krishnawami, Jan. 23, 2018 draft, pages 42-50, 57-59, and 61, Ex. 3]. Mr. DeFeo examined Dr. Livernois about the Sensor Design Manual during his January, 2018 deposition. *See* [Deposition of T. Livernois, Jan. 19, 2018 draft, pages 103-117, Ex. 4]. Accordingly, Plaintiffs cannot point to a single, concrete example of prejudice that they have suffered as a result of the allegedly late production of the Sensor Design Manual.

Likewise, with respect to the FMEA documents, Ford has produced two FMEAs for the airbag assemblies. *See* Ex. 7. Further, Plaintiffs' counsel also had the opportunity to question

Autoliv's witness, Thomas Borninski, regarding the FMEA process and related documents. Mr.

Borninski established that the document produced by Autoliv, Exhibit 102 to Mr. Borninski's

deposition, was more comprehensive than an FMEA worksheet that Plaintiffs seek:

> Q: Okay. Next is request 9, and I think I've got a flag on it.
> A: Okay.
> Q: And that is Design Failure Mode and Effects Analysis?
> A: Yes.
> Q: And do you have documents responsive to that request?
> A: Well, specifically the request says: Or similar engineering documents. So we did provide Exhibit 102, which contains a description of each and every circuit in the diagnostic monitor and how it operates. So typically the response to failure modes is described in that document.
> Q: And that one's already been identified as an exhibit?
> A: Exhibit 102.
> Q: Okay. That's not what a Failure Mode and Effects Analysis worksheet looks like, though, does it?
> A: It's correct that Exhibit 102 is not an FMEA worksheet. My referring to it is that the request for production said: Or similar engineering document. **I believe that Exhibit 102 provides a level of detail greater than that provided in the FMEA, so describes each and every circuit, its theory of operation, how it responded to fault conditions, for example, and gives a great deal of information about how the diagnostic monitor performs.**
> Q: And that FMEA description that you're talking about is as to the diagnostic monitor, right?
> A: Yes.

[Deposition of T. Borninski, p. 76:18-25, 77: 1-22, Ex. 2 (Emphasis added)]

As shown, there would be no disruption and efficiency of the trial as a result of Ford's

actions, as Plaintiffs have the information they claim they need well in advance of trial and after

they deposed both their expert and Ford's expert regarding the Service Design Manual. Finally,

while Plaintiffs assert the Sensor Design Manual is "critical" evidence, it is clear from the

testimony regarding this document that this is not the case. Based on the factors, Ford's actions

were substantially justified and sanctions are not warranted.

14

### c. Rule 37(a)(5) does Not Apply

Plaintiffs request relief under Rule 37(a)(5). Plaintiffs' Motion for Further Rule 37 Sanctions, pg. 13. This section of the Rule provides that if a motion to compel is granted, the party whose conduct necessitated the motion must pay the movant's reasonable expenses incurred in making the motion unless subsections (i)-(iii) apply. Plaintiffs have not moved to compel anything from Ford. Therefore, subsection (a)(5) is inapplicable here.

### d. Rule 37(e) Cannot Support Sanctions Against Ford

As to the FMEA, Mr. Borninski testified, that certain documents may have been stored electronically. [Deposition of T. Borninski, p. 36:8-9, Ex. 2]. Although not specifically raised by Plaintiffs' Motion, Rule 37(e) does not provide a basis for sanctions against Ford. Rule 37(e) applies to the failure to preserve electronically stored information ("ESI") that (1) should have been preserved in the anticipation or conduct of litigation because a party failed to take reasonable steps to preserve it and (2) that cannot be restored or replaced through additional discovery. Both of these threshold showings must be met before a Court considers whether sanctions are appropriate. If the court finds prejudice to another party from the loss of the information, it may order measures no greater than necessary to cure the prejudice. Rule 37(e)(1). Only upon a finding that the party acted with the *intent to deprive* another party of the information's use in the litigation may the court do any of the following: presume the lost information was unfavorable to the party, instruct the jury that it may or must presume the information was unfavorable to the party, or dismiss the action or enter a default judgment. Rule 37(e)(2)(A)-(C).

As the party seeking the sanctions, Plaintiffs bear the burden of showing the requisite intent and prejudice. ***Zamora v. Stellar Mgmt. Grp., Inc.***, 2017 WL 1362688, *2 (W.D. Mo.

Apr. 11, 2017). As explained below, Plaintiffs have suffered no prejudice from Ford's actions regarding the Service Design Manual and the FMEA documents. Therefore, Rule 37(e)(1) does not apply. Likewise, Rule 37(e)(2) cannot support sanctions in this case. Plaintiffs have presented no evidence of an intent to deprive, nor can they. Ford has already produced the Service Design Manual, and, as Ford and Mr. Borninski explained, to the extent an FMEA of the diagnostic monitor existed, the diagnostic monitor technology would have been transferred from Ford to Visteon more than 20 years before Plaintiffs even filed a lawsuit. "[A] corporation under a duty to preserve is not required to keep every shred of paper, every e-mail or electronic document, and every backup tape [.]'" *Alabama Aircraft Indus., Inc. v. Boeing Co.*, 319 F.R.D. 730, 740–41 (N.D. Ala. 2017), *motion to certify appeal denied*, 2017 WL 4572484 (N.D. Ala. Apr. 3, 2017) (internal citations omitted). Certainly there could be no intent to deprive here.

Without a finding of intent to deprive, the remedies provided by subsections (A)-(C) are unavailable. *See Wal-Mart Stores, Inc. v. Cuker Interactive, LLC*, 2017 WL 239341, *1 (W.D. Ark. Jan. 19, 2017) (denying the plaintiff's motion for sanctions, holding that the plaintiff did not demonstrate prejudice and that it would base a finding of prejudice on speculation, and, consequently, did not reach the issue of intent); *Bry v. City of Frontenac*, 2015 WL 9275661, at *11 (E.D. Mo. Dec. 18, 2015), *aff'd sub nom. Bry v. City of Frontenac*, 660 F. App'x 485 (8th Cir. 2016) (holding that because there was no evidence of an intent to deprive another party of the use of lost ESI, the remedies under Rule 37(e)(2) were not available). Further, Plaintiffs have not shown that any of the information they sought could not be obtained (or was already obtained) through additional discovery, and, to the contrary, the Sensor Design Manual has been produced, multiple witnesses have discussed it, including Plaintiffs' own expert, and Plaintiffs could seek the FMEA documents from other entities, such as Ford's supplier. *Zam v. U.S.*, 2018

16

WL 339414, *3 (E.D. Mo. Jan. 9, 2018) (plaintiff did not show that files sought could not be restored or replaced through additional discovery).

> **e. Plaintiffs Failed to Comply with Local Rule 37.1 and the Parties' Joint Proposed Scheduling and Trial Order**

Despite Plaintiffs' claim that they have "extensively golden-ruled this case," Plaintiffs have failed to meet and confer as required by Local Rule 37.1 prior to filing of the instant motion, as explained more fully in Ford's Motion to Strike.[6] *See* Doc. 160, pg. 3, ¶ 5; *see also* Local Rule 37.1. Further, the parties agreed upon and restated these procedures in their Joint Proposed Scheduling and Trial Order filed on July 5, 2016. [Doc. No. 14].

Plaintiffs' Motion should be stricken for failure to comply with Local Rule 37.1 and the parties' Joint Proposed Scheduling and Trial Order. Plaintiffs claim that by including a reference to the Sensor Design Manual in their January 3, 2018 email to the Court regarding the additional testing Ford has requested, they have complied with the parties' meet and confer requirements and Local Rule 37.1. However, a passing reference in an email to the Court concerning a different topic does not constitute a meaningful meet and confer.

> **D. <u>The Imposition of Sanctions is Inappropriate Under the Circumstances</u>**

In the instant case, there is absolutely no evidence that Ford has violated any Court Order or failed to comply with its obligations in discovery. Rather, Ford has adequately and diligently responded or objected to Plaintiffs' sweeping discovery requests as permitted by the Federal Rules of Civil Procedure. Further, Plaintiffs have not pointed to a single discovery request to which the Sensor Design Manual was responsive, nor have they provided any support for their accusation that Ford is withholding any relevant FMEA.

---

[6] Ford incorporates by reference its Motion to Strike as if fully stated herein.

Ford has also supplemented its production as necessary. Federal Rule of Civil Procedure 26(e) requires parties to supplement discovery responses if the party learns that the response is in some material respect incomplete or incorrect or if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. Rule 26(e)(1)(A). The Sensor Design Manual discussed in Plaintiffs' Motion is in Plaintiffs' possession, Plaintiffs' expert testified as to his opinions regarding the Manual in his supplemental deposition, and Ford's expert and corporate representative, Ram Krishnaswami, was questioned about the Manual during two separate depositions. Notwithstanding Plaintiffs' numerous attempts to impugn Ford's reputation, mischaracterize its conduct in the discovery process in this and unrelated cases, and mislead the Court, Ford has followed both the letter and spirit of the Federal Rules of Civil Procedure.

The truth of Ford's discovery practices looks nothing like the false picture that Plaintiffs have tried to paint. The majority of the unrelated cases cited by Plaintiffs involved discovery disputes that occurred as many as 10, 20, 30, or even 40 years ago. Many of the lawyers or employees involved in those disputes are no longer involved in discovery and had nothing to do with the discovery in this case. Plaintiffs' allegations must be put in perspective. Ford is one of the world's largest manufacturers of automobiles. During the past 20 years alone, Ford has launched more than 100 different vehicles, sold more than 400 million vehicles, employed hundreds of thousands of people at more than 100 plants worldwide. A company of this size and scope, like other major companies, is sued many times every year. These suits address every conceivable subject (products liability, asbestos, contract disputes, employment claims, environmental compliance). Since 1980, Ford has been sued more than tens of thousands of times and has been required to respond to hundreds of thousands of broad-ranging questions in

the discovery process. In a typical year, Ford responds to thousands of interrogatories, requests for admissions, and requests for production, and produces millions of pages of documents in litigation. At least 99.9% of cases are resolved without any suggestion of error in Ford's production of documents. Plaintiffs have selected a tiny fraction of cases to try and make a case for a pattern of discovery misconduct that is clearly absent.

Plaintiffs often use discovery disputes as a litigation technique, as Plaintiffs are doing in this case. Unfortunately, discovery in civil litigation, when used as a weapon to secure leverage in settlement or distract from the merits of the case, is not about providing evidence for trial. Under the Federal Rules, particularly as amended, efforts to use discovery as a litigation tool should be expeditiously dismissed by the Court. Parties' discovery efforts must be reasonable and proportional and perfection is not the standard. "[W]hile parties must impose a reasonable construction on discovery requests and conduct a reasonable search when responding to the requests, the Federal Rules do not demand perfection." *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 615 (C.D. Cal. 2013) (citations omitted). Further, "[t]here is no obligation on the part of a responding party to examine every scrap of paper in its potentially voluminous files … Courts cannot and do not expect that any party can meet a standard of perfection." *Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, 2018 WL 276941, at *6 (M.D. La. Jan. 3, 2018) (internal quotations and citations omitted).

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' Motion for Further Rule 37 Sanctions should be denied.

_/s/ Sherry A. Rozell_
Sherry A. Rozell, Mo. Bar #34131
Steven E. Ward, Mo. Bar #43285
MCAFEE & TAFT
Two West 2nd Street, Suite 1100
Williams Tower II
Tulsa OK 74103
(918) 587-0000; (918) 599-9317 (fax)
sherry.rozell@mcafeetaft.com
steve.ward@mcafeetaft.com
**ATTORNEYS FOR DEFENDANT**
**FORD MOTOR COMPANY**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing was electronically served on all counsel of record this 26th day of January, 2018.

_/s/ Sherry A. Rozell_