# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| STEVEN W TABER, et al., | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )  Case No. 16-00162-CV-W-SWH |
| | ) |
| FORD MOTOR COMPANY OF | ) |
| DELAWARE, | ) |
| | ) |
|     Defendant. | ) |

## ORDER

### I. BACKGROUND

This matter arises out of severe injuries sustained by Steven Taber when the 1996 Ford Ranger he was driving was struck in an offset frontal impact collision. (Doc. #43, at 1) Plaintiffs alleged, *inter alia*, that the airbag system was defective and unreasonably dangerous. (Doc. #43, at 1)

In January of 2017[1], the parties began what turned out to be a long and protracted discovery dispute. At that time, Ford requested that the proceedings pertaining to certain discovery issues be sealed. The Court temporarily sealed all records, documents and transcripts related to the motion to compel (doc. #48) and indicated that the matter would be revisited. (Doc. ##50 & 74) After months of briefing and hearings on the underlying discovery dispute, the Court requested that the issue of whether to permanently seal certain portions of the record be briefed. (Doc. #111, at 8). In response Ford filed Defendant Ford Motor Company's Motion to Seal Certain Materials. (Doc. #122) In response to briefing and exhibits submitted by plaintiffs which were submitted

---

[1] The parties had a prior discovery dispute which touched upon some of the issues raised in the current discovery dispute. (See Doc. ##39, 41)

after Ford's motion to seal, Ford requested that an additional exhibit be temporarily sealed. (Doc. ##189, 190)

In mid-February 2018, the Court was notified that the parties had resolved the matter through mediation, and a stipulation of dismissal was filed on May 3, 2018. (Doc. #194) In response to inquiries from this Court as to whether the settlement addressed the issue of whether any documents should remain under seal, Ford filed Ford Motor Company's Motion to Permanently Seal Certain Documents. (Doc. #195) Document #195 reasserts the previous arguments made in document #122 and document #189.

The issue of whether documents should be permanently sealed is an issue which implicates the tradition of open and transparent Court proceedings, and thus, must be resolved despite the parties' settlement of the issues raised by plaintiffs' complaint. See FutureFuel Chem. Co. v. Lonza, Inc, 756 F.3d 641, 648 (8th Cir. 2014) (noting that the "right of access to judicial records and documents is independent of the disposition of the merits of the case."). The Court finds that the other motions[2] which were pending at the time of the settlement, including the motions for sanctions under Federal Rule of Civil Procedure 37 have been resolved by the settlement reached by the parties. See doc. #194 (stating that "[a]ll matters and controversies between Plaintiffs and Defendant have been fully and finally adjusted, settled and compromised, and all claims of Plaintiffs against Defendant having been satisfied in full . . . .")

In its briefing to the Court, Ford requests that the Court seal certain records relating to three main areas: 1) Ford's suspension orders, 2) the Global Information Standard 1 (hereafter "GIS 1"), and 3) evidence relating to other similar incidents (hereafter "OSI"). (Doc. #122, at 1) Specifically Ford requests that this court permanently seal the following records:

---

[2] This would include docs. ##160, 167, 171, 174, 180, 184, 186.

1.      A portion of Plaintiffs' Suggestions in Support of Their Motion and Memorandum for Order Compelling Responses to Plaintiffs' Request for Production and Plaintiffs' Rule 30(b)(6) Topics (doc. #49):
      a.      Page 8, first paragraph starting with "Clearly" through end of that paragraph on page 9.

2.      A portion of the January 11, 2017 Letter from Attorney DeFeo to Chambers (doc. #49-3):
      a.      Carryover paragraph on page 5 starting with "Clearly" through end of that paragraph.

3.      The entirety of Suspension Order Number 859981, version updated 11/28/2005 (doc. # 49-10).

4.      All data on a flash drive (doc. #49-17) produced by Ford on December 22, 2016, and subsequently filed as an attachment to Plaintiffs' Suggestions in Support of Their Motion and Memorandum for Order Compelling Responses to Plaintiffs' Request for Production and Plaintiffs' Rule 30(b)(6) (doc. #49).

5.      Portions of the January 12, 2017 telephone conference transcript (doc. #51 and doc. #75-15):
      a.      Page 10, line 23, starting after "state in calls" through Page 11, line 1 ending before "things of that sort",
      b.      Page 19, line 16, starting after "title of the document is" through line 18 ending before "That's what…",
      c.      Page 19, line 21, starting after "this document and" through line 24,
      d.      Page 20, line 24, starting after "Your Honor," through Page 21, line.

6.      Portions of the June 21, 2005 video deposition of Elizabeth Adkins transcript (doc. #78-12).

7.      A portion of a March 24, 2017 letter to Attorney Rozell from Attorney DeFeo (doc. #84-3) which was later attached as an exhibit to Plaintiffs' Supplemental Suggestions in Support of Their Motion to Compel Ford's Responses to Plaintiffs' Request for Production and Plaintiffs' Rule 30(b)(6) Topics (doc. #84):
      a.      Image capture of Suspension Order 859981 on page 4.

8.      Portions of the April 12, 2017 status conference transcript (doc. #85):
      a.      Page 69, line 4 starting after "and preserve" through line 11.
      b.      Page 78, line 19 starting after "defect situation" through line 25 ending before "Then it…."
      c.      Page 81, line 11 starting after "referencing." through line 15 ending before "We know…."
      d.      Page 83, line 15 starting after "page 39." through line 16 ending before "This isn't…."

  e.  Hearing Exhibit 5, GIS 1.

9.  Portions of Plaintiffs' Supplemental Motion to Compel (doc. #88):
  a.  Quoted language from different versions of the Suspension Orders, starting on page 2 and ending on page 3,
  b.  Page 4, subsection 2, paragraph 1, sentence 1 discussing the GIS1,
  c.  Page 4, bullet list of items maintained pursuant to GIS1,
  d.  Image captured on page 5,
  e.  Page 6, last 2 lines of paragraph 1, beginning "which",
  f.  Page 6, subsection d, first sentence after bullet list, beginning "which" and ending "description",
  g.  Page 7, subsection III, paragraph 1, second sentence after "GIS1",
  h.  Page 7, subsection III, third sentence starting at "Global".

10.  The entirety of the Corporate Records Management (doc. #88-1), attached as Exhibit 40 to Plaintiffs' Supplemental Motion to Compel.

11.  The entirety of Version 1 of the GIS 1 (doc. #88-2), attached as Exhibit 41 to Plaintiffs' Supplemental Motion to Compel.

12.  The entirety of Version 2.11 of the GIS 1 (doc. #88-3), attached as Exhibit 42 to Plaintiffs' Supplemental Motion to Compel.

13.  Portions of Ford Motor Company's Response to Plaintiffs' Supplemental Motion to Compel (doc. #92):
  a.  Page 16, subsection 2, paragraph 1, sentence 3, beginning at "specifies" through end of page,
  b.  Page 17, paragraph 1, sentence 1,
  c.  Page 17, paragraph 1, sentence 2, after "specifies" through end of sentence,
  d.  Page 17, paragraph 1, sentence 3, after "specifies" through end of sentence,
  e.  Page 17, paragraph 2, sentence 1, after "specifies" through end of sentence,
  f.  Page 17, paragraph 2, sentence 2, after "states" through end of sentence,
  g.  Page 17, paragraph 2, sentence 3, after "provides" through end of sentence,
  h.  Page 17, paragraph 2, sentence 4,
  i.  Page 17, paragraph 2, sentence 5, after "specifies" through end of sentence,
  j.  Page 17, paragraph 2, sentence 6, after "provides" through end of sentence.

14.  All data on Ford's in camera submission pursuant to the Court's order (doc. #113).

Ford subsequently requested that document #183-6 be sealed. (Doc. ##189, 195) Document #183-6 is the same as document #49-10 (Suspension Order 859981, version updated 11/28/2005).

## II.  STANDARD

American courts recognize a common law right of access to judicial records and documents. Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597, 98 S. Ct. 1306, 1312, 55 L. Ed. 2d 570 (1978). Nevertheless, the right is not absolute. United States v. Webbe, 791 F.2d 103, 106 (8th Cir. 1986). The determination of whether records and documents should be sealed is left to the discretion of the court. Webster Groves Sch. Dist. v. Pulitzer Pub. Co., 898 F.2d 1371, 1376 (8th Cir. 1990).

In determining whether to seal certain documents, "the court must consider the degree to which sealing a judicial record would interfere with the interests served by the common-law right of access and balance that interference against the salutary interests served by maintaining confidentiality of the information sought to be sealed." IDT Corp. v. eBay, 709 F.3d 1220, 1223 (8th Cir. 2013). In so doing, the court looks to the role the document plays in the exercise of the court's judicial power. Id., at 1224. Thus, where the documents are used to determine substantive rights of a party the presumption of public access is at its strongest. Simon v. G.D. Searle & Co., 119 F.R.D. 683, 684 (D. Minn. 1987). Documents filed in connection with discovery motions, however, are on the other end of the spectrum. E.E.O.C. v. GMT, LLC, 2012 WL 2871789, at *3 (D. Neb. July 12, 2012).

## III.  ANALYSIS

The Court recognizes that the documents, pleadings and transcripts identified by Ford are connected to discovery motions, and therefore, the presumption of public access is at its weakest.

Nevertheless, to prevail on its motion Ford must make a showing that the documents should remain sealed. Ford's suggestions in support of the motion primarily discusses the suspension orders and the GIS 1. Ford argues that the suspension orders are protected by the attorney-client privilege and work product protection and that unsealing such documents would result in the loss of such privilege in other forums. (Doc. #123, at 11-14) With regard to the GIS 1, Ford maintains that the GIS 1 contains confidential and competitively sensitive information and should therefore remain under seal. (Doc. #123, at 15-18)

With regard to one version of the suspension order, it is important to point out that plaintiffs did not obtain such document from Ford. Instead the suspension order was obtained by plaintiff via means other than production by Ford. Ford was compelled to produce that suspension order in Baumgart v. Ford Motor Co., 04-CV-211563 (Jackson County, MO, 2007) and it was often referred to as the Baumgart Suspension Order during the course of the instant litigation. (Doc. #49-9, at 15, 16) The court in Baumgart later found that the suspension order was not subject to the Agreed Protective Order. (Doc. #78-11) Ford does not contest that the Baumgart Suspension Order is not subject to a protective order. Instead, Ford argues that this Court should ignore the public nature of the document and apply the balancing test described in IDT Corp. This Court declines to adopt Ford's approach. The Baumgart Suspension Order was not covered by a protective order and has apparently, as evidenced by its use in the instant case, been shared outside of those involved with the Baumgart litigation. Allowing the document to be unsealed does no further harm to Ford. Therefore, the Court denies Ford's request to seal the following documents and pleadings:

> 1. A portion of Plaintiffs' Suggestions in Support of Their Motion and Memorandum for Order Compelling Responses to Plaintiffs' Request for Production and Plaintiffs' Rule 30(b)(6) Topics (doc. #49):

     a.    Page 8, first paragraph starting with "Clearly" through end of that paragraph on page 9.

2.    A portion of the January 11, 2017 Letter from Attorney DeFeo to Chambers (doc. #49-3):
     a.    Carryover paragraph on page 5 starting with "Clearly" through end of that paragraph.

3.    The entirety of Suspension Order Number 859981 (doc. ## 49-10 and 183-6).

4.    A portion of a March 24, 2017 letter to Attorney Rozell from Attorney DeFeo (doc. #84-3) which was later attached as an exhibit to Plaintiffs' Supplemental Suggestions in Support of Their Motion to Compel Ford's Responses to Plaintiffs' Request for Production and Plaintiffs' Rule 30(b)(6) Topics (doc. #84):
     a.    Image capture of Suspension Order 859981 on page 4.

This Court notes that later versions of the suspension order were filed as part of another filing in this matter (see doc. #113). The Court will address document #113 below.

Unlike the Baumgart Suspension Order, the GIS 1 was produced by Ford as part of the discovery process in this case. Ford has asserted that the documents are "proprietary, confidential, and trade secret information of Ford." (Doc. #123, at 15) In support of its assertion, Ford submitted a declaration from the Global Information Management Program Deployment Manager at Ford, who asserts that the "automotive industry is highly competitive and information management and technology in a dynamic business environment can confer a distinct competitive advantage to a corporation." (Doc. #123-3, at 4) Rule 26 of the Federal Rules of Civil Procedure permits a party to request that "trade secret or other confidential research, development, or commercial information not be revealed or revealed only in a specified way[.]" Fed. R. Civ. P. 26(c)(1)(G). The party seeking the protective order must show good cause for its issuance. Fed. R. Civ. P. 26(c)(1). While Ford's explanation in this matter is conclusory and does not provide exactly how such information could disadvantage the company if released, the Court finds that this is the type

of discovery document not usually filed with the court at this stage of the litigation. Therefore, this Court finds that the following portions of the record shall remain under seal:

1.  April 12, 2017 status conference (doc. #86) Hearing Exhibit 5, GIS 1.

2.  Portions of Plaintiffs' Supplemental Motion to Compel (doc. #88):
    a.  Page 2, subsection 1a, paragraph 2-4 starting after "SUSPENSION ORDERS",
    b.  Page 3, partial paragraph 1 beginning "suspension" and ending "Manual",
    c.  Page 3, subsection 1b, paragraphs 1-2 starting after "3.3 Suspension Orders",
    d.  Page 3, subsection 1c, paragraph 1 starting after 9.5.1 OGC and OTC Suspension Orders,
    e.  Page 4, subsection 2, paragraph 1, sentence 1,
    f.  Page 4, bullet list,
    g.  Page 5, copied image in the middle of first full paragraph,
    h.  Page 6, last two lines of paragraph 1, beginning "which",
    i.  Page 6, subsection d, first sentence after bullet list, beginning "which" and ending "description",
    j.  Page 7, subsection III, paragraph 1, second sentence after "GIS1",
    k.  Page 7, subsection III, third sentence starting at "Global".

3.  The entirety of the Corporate Records Management document, attached as Exhibit 40 to Plaintiffs' Motion to Compel (doc. #88-1)

4.  The entirety of Version 1 of the GIS 1, attached as Exhibit 41 to Plaintiffs' Supplemental Motion to Compel (doc. #88-2)

5.  The entirety of Version 2.11 of the GIS 1, attached as Exhibit 42 to Plaintiffs' Supplemental Motion to Compel (doc. #88-3)

6.  Portions of Ford Motor Company's Response to Plaintiff's Supplemental Motion to Compel (doc. #92):
    a.  Page 16, subsection 2, paragraph 1, sentence 3, beginning at "specifies" through end of page,
    b.  Page 17, paragraph 1, sentence 1,
    c.  Page 17, paragraph 1, sentence 2, after "specifies" through end of sentence,
    d.  Page 17, paragraph 1, sentence 3, after "specifies" through end of sentence,
    e.  Page 17, paragraph 2, sentence 1, after "specifies" through end of sentence,
    f.  Page 17, paragraph 2, sentence 2, after "states" through end of sentence,

8

  g. Page 17, paragraph 2, sentence 3, after "provides" through end of sentence,
  h. Page 17, paragraph 2, sentence 4,
  i. Page 17, paragraph 2, sentence 5, after "specifies" through end of sentence,
  j. Page 17, paragraph 2, sentence 6, after "provides" through end of sentence.

  Ford also requests that document #78-12, which contains portions of the video deposition transcript of Elizabeth Adkins, be sealed. Ms. Adkins video deposition was taken in a Georgia case over ten years ago. (Don Jackson v. Ford Motor Company, et al., 02A9882-4 (DeKalb County, Georgia, June 21, 2005)). The Court finds that the document has been shared outside of the original litigation as evidenced by its use in this case and in at least one other case. (See doc. ##143-2, 143-3, 143-4, which are various filings in Symes v. Ford Motor Company, et al., 05-CV23474 (Jackson County, Missouri, May 2, 2006)) Ford attempts to argue that the document was marked confidential but has not provided any evidence of an attempt to enforce a protective order with regard to the document. (Doc. #155, fn. 2) Furthermore, like the suspension order, Ford has not provided any argument as to what additional harm may come its way by unsealing the submitted portions of the transcript in the instant case. Therefore, this Court denies Ford's request to seal document #78-12.

  Finally, Ford requests that this Court seal two flash drives. The first flash drive, doc. #49-17, contains Ford's production of OSI data. The second flash drive (doc. #113) is the in camera submission to this court, which contains various versions of Suspension Order 859981, as well as OSI data. Ford has provided no reasoning as to why the OSI data should be sealed. Nevertheless, this Court finds that the data should be sealed. First, the data is the type of data normally produced between the parties during discovery and not filed with the court until used at trial, if used at all. There has been no indication that the data has previously been available to the public. Finally,

with regard to document #113, this Court ordered that such data be produced to the Court in order to determine whether production of the data was required. Therefore, this Court will grant Ford's request to seal the OSI data on document #49-17 and document #113. Document #113 also contains suspension orders that were later versions of the same suspension order in Baumgart. Because those later versions of the suspension order were filed for in camera review and there is no evidence that the later versions were previously available to the public, this Court will grant Ford's request to seal document #113 in its entirety.

The discussion thus far has focused on documents and data submitted to the court by the parties. Ford, however, also requests that certain transcripts be sealed. As the court in Krueger v. Ameriprise Fin., Inc., No. CV 11-2781, 2014 WL 12597948, at *10 (D. Minn. Oct. 14, 2014) noted "[j]udicial orders and hearing transcripts reflect the everyday business of the courts and clearly amount to judicial records." Krueger v. Ameriprise Fin., Inc., No. CV 11-2781, 2014 WL 12597948, at *10 (D. Minn. Oct. 14, 2014). Most of the identified portions of the transcripts deal with the Baumgart Suspension Order. As to those portions of the transcript that deal with GIS 1, such references are minimal and Ford has provided no reasoning as to what harm may come to them in releasing those references. Therefore, the Court will deny Ford's request to seal portions of the transcripts of the January 12, 2017 telephone conference (docs. ##51 and 75-15) and the April 12, 2017 status conference (doc. #85).

Based on the foregoing, it is

ORDERED that Defendant Ford Motor Company's Motion to Seal Certain Materials (doc. #122) and Ford Motor Company's Motion to Permanently Seal Certain Documents (doc. #195) are GRANTED in part, and DENIED in part. It is further

ORDERED that Defendant Ford Motor Company's Motion to Temporarily Seal Exhibit (doc. #189) is DENIED. It is further

ORDERED that the following documents shall remain under seal:

1. April 12, 2017 status conference (doc. #86) Hearing Exhibit 5, Global Information System 1.

2. Portions of Plaintiffs' Supplemental Motion to Compel (doc. #88):
   a. Page 2, subsection 1a, paragraph 2-4 starting after "SUSPENSION ORDERS",
   b. Page 3, partial paragraph 1 beginning "suspension" and ending "Manual",
   c. Page 3, subsection 1b, paragraphs 1-2 starting after "3.3 Suspension Orders",
   d. Page 3, subsection 1c, paragraph 1 starting after 9.5.1 OGC and OTC Suspension Orders,
   e. Page 4, subsection 2, paragraph 1, sentence 1,
   f. Page 4, bullet list,
   g. Page 5, copied image in the middle of first full paragraph,
   h. Page 6, last two lines of paragraph 1, beginning "which",
   i. Page 6, subsection d, first sentence after bullet list, beginning "which" and ending "description",
   j. Page 7, subsection III, paragraph 1, second sentence after "GIS1",
   k. Page 7, subsection III, third sentence starting at "Global".

3. The entirety of the Corporate Records Management document, attached as Exhibit 40 to Plaintiffs' Motion to Compel (doc. #88-1)

4. The entirety of Version 1 of the Global Information Standard 1 (GIS 1), attached as Exhibit 41 to Plaintiffs' Supplemental Motion to Compel (doc. #88-2)

5. The entirety of Version 2.11 of the Global Information Standard 1 (GIS 1), attached as Exhibit 42 to Plaintiffs' Supplemental Motion to Compel (doc. #88-3)

6. Portions of Ford Motor Company's Response to Plaintiff's Supplemental Motion to Compel (doc. #92):
   a. Page 16, subsection 2, paragraph 1, sentence 3, beginning at "specifies" through end of page,
   b. Page 17, paragraph 1, sentence 1,
   c. Page 17, paragraph 1, sentence 2, after "specifies" through end of sentence,
   d. Page 17, paragraph 1, sentence 3, after "specifies" through end of sentence,

  e. Page 17, paragraph 2, sentence 1, after "specifies" through end of sentence,
  f. Page 17, paragraph 2, sentence 2, after "states" through end of sentence,
  g. Page 17, paragraph 2, sentence 3, after "provides" through end of sentence,
  h. Page 17, paragraph 2, sentence 4,
  i. Page 17, paragraph 2, sentence 5, after "specifies" through end of sentence,
  j. Page 17, paragraph 2, sentence 6, after "provides" through end of sentence.

 It is further ORDERED that all remaining documents which were the subject of Ford's motions should be unsealed.

                */s/ Sarah W. Hays*
                SARAH W. HAYS
              UNITED STATES MAGISTRATE JUDGE